IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALEXANDER BUSCH,<br>*Plaintiff*,<br>v.<br>COLLEGE OF SAINT MARY,<br>*Defendant.* | Civil Action No. _____<br><br>**COMPLAINT**<br>**(Jury Demanded)** |

COMES NOW, Plaintiff Alexander Busch ("Plaintiff" or "Mr. Busch"), by and through his undersigned counsel, and complains and alleges against Defendant College of Saint Mary ("CSM"), based upon personal knowledge, information and a reasonable belief, as follows:

**INTRODUCTION AND SUMMARY**

CSM aborted Mr. Busch's promising career as a physician's assistant, ignoring their own policy and procedures, by wrongfully dismissing him from its Physician Assistant Program (the "Program") because of a mistake made by his mother. Mr. Busch, who has been disabled since he was a toddler with viral and allergy induced asthma, applied for an exemption from CSM's second required flu shot because of a severe reaction he suffered from the first one. As required by CSM, he submitted with his application a letter drafted by a nurse who had witnessed his symptoms from the first flu shot. However, unbeknownst to Mr. Busch, his mother edited the draft stylistically, though not substantively. With no prior notice and no opportunity to present testimony from his mother and the nurse, CSM summarily dismissed Mr. Busch from the Program, deeming his submission of the revised letter an act of academic dishonesty. CSM's arbitrary and capricious decision denied Mr. Busch his contractual right to basic fairness and violated the Americans with Disabilities Act ("ADA")

1

## PARTIES

1.  Plaintiff Alexander Busch is a resident of Minnesota and formerly was a student in the Physician Assistant Program at CSM.

2.  Defendant CSM is a private institution of higher learning with its principal place of business in Omaha, Nebraska.

## JURISDICTION & VENUE

3.  The Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1331 (federal question). This Court has personal jurisdiction over the parties because, *inter alia*, Defendant is located in the District of Nebraska.

4.  Venue is proper in the District of Nebraska pursuant to 28 U.S.C. § 1391(b) because Busch's claims arise in this district and CSM is located in this district.

5.  Costs and attorney's fees are sought.

## THE FACTS

6.  Mr. Busch was raised in Minnesota. When he was a toddler, Mr. Busch was diagnosed with viral and allergy induced asthma. He received life-saving nebulizer treatments on multiple occasions under the care of medical professionals, and he was prescribed a personal nebulizer that he kept with him wherever he went. As he became older, Mr. Busch was prescribed life-saving inhalers and successfully managed his asthma with medication.

7.  Mr. Busch had long dreamed of becoming a physician's assistant. After graduating from Bethel University with a degree in Biokinetics and accumulating 10,000 hours of clinical experience and direct patient care, he applied to and was accepted by CSM's two-year Program.

8.  After Mr. Busch was accepted by CSM, he moved from Minnesota to Omaha and joined the cohort of students that matriculated in the Fall of 2020.

9. When he enrolled in the Program, Mr. Busch was required to and did submit to CSM documentation showing that he had viral and allergy induced asthma. Thus, CSM was on notice from the time Mr. Busch first started the Program that he suffered from this disability.

10. Mr. Busch performed very well during his first year in the Program. He passed all his courses and maintained an acceptable grade point average. In the fall semester he earned the grade of A+ in professional practice, and in the summer semester he earned the grade of A+ in medical ethics. Mr. Busch never once had a single academic or disciplinary problem.

11. As stated in its Academic Catalog, CSM requires its students to receive the flu vaccine.

12. Mr. Busch was apprehensive about receiving the flu vaccine, both because of his disabling asthma and because his uncle had contracted Guillain-Barre Syndrome and nearly died after receiving the flu vaccine.

13. Nevertheless, Mr. Busch complied with CSM's requirement and received the flu vaccine at CSM's Flu Shot Clinic on October 27, 2020.

14. Mr. Busch experienced a severe adverse reaction to the flu vaccine. His face, neck, and lips swelled, and he panicked because he had difficulty breathing. This occurred at the height of the COVID-19 pandemic, and public health authorities were urging people to avoid going to hospital emergency rooms if they were not affected by COVID. Accordingly, Mr. Busch, whose was covered on his mother Wendy Busch's medical insurance plan, called his mother in Minnesota and asked her for advice.

15. Wendy Busch had a friend, Rachel Domagala, who was a nurse and held a Doctor of Nursing Practice degree. She called Ms. Domagala and arranged for Ms. Domagala to meet with Mr. Busch by Zoom the same day, October 27, 2020, that Mr. Busch had received the flu

vaccine.

16. After discussing Mr. Busch's symptoms with him, Ms. Domagala recommended that he go to a hospital emergency room if his symptoms worsened.

17. Mr. Busch's condition stabilized over the next few days and, while undergoing medicinal treatment, he was able to resume regular daily activities and his studies in the Program.

18. After Mr. Busch completed his first year in the Program, he received a stellar Professional Evaluation. His Program advisor, Brittany Bostic, gave him the highest ranking available in all measured competencies, stated that there were no professional concerns about his work, and summed up the Evaluation by saying: "KEEP UP THE GREAT WORK."

19. When Mr. Busch's second year in the Program began in the Fall of 2021, he was determined not to risk his health and life again by having a second flu vaccine. Accordingly, on October 21, 2020, he e-mailed Program leadership to inquire about requesting an exemption from the second flu vaccine.

20. On October 25, 2021, Mr. Busch received an e-mail from Clare Kennedy, Program Director, noting that he had complied with Program requirements by having the flu vaccine the previous year and acknowledging his request for an exemption for the second flu vaccine. Ms. Kennedy said she spoke with Dr. Mindy Barna, Vice President of Academic Affairs at CSM, and that Dr. Barna said Mr. Busch would have to submit two forms of documentation to support his application for an exemption: "Medical documentation of the adverse reaction AND Documentation from your medical provider advising against you receiving the vaccine." Ms. Kennedy told Mr. Busch to submit this documentation "as quickly as possible."

21. Mr. Busch did not have in his possession on October 25, 2021, either form of documentation requested by Ms. Kennedy and Dr. Barna, nor did he have an established medical

4

provider in Omaha. Mr. Busch was also extremely busy working on his clinical rotations.

22. As a result, Mr. Busch called his mother Wendy Busch in Minnesota and asked her to gather and forward to him his complete medical file from birth from all his medical providers in Minnesota who had treated his asthma. Mr. Busch planned to make an appointment with a medical provider in Omaha and present that provider with this medical file for the purpose of securing a letter advising against taking a second flu vaccine. That would satisfy the second documentation requirement. Mr. Busch planned to satisfy the first documentation requirement by submitting a letter from Ms. Domagala, who could confirm his adverse reaction to the first flu vaccine.

23. Wendy Busch started gathering his medical records from birth. She also contacted Ms. Domagala to ask her if she would be willing to submit a letter verifying the severe reaction Mr. Busch had experienced to the first flu vaccine.

24. Ms. Domagala agreed to draft a letter documenting Mr. Busch's severe reaction to the flu vaccine he received in October 2020. She asked Wendy Busch to find out the exact date of that vaccine. Wendy Busch asked Mr. Busch for that date.

25. Mr. Busch did not remember the exact date in October 2020 that he received the flu vaccine. However, he found some papers indicating that the CSM had given the flu vaccine on October 13, 2020, and that is what he told his mother. As it turns out, that was a mistake. CSM originally scheduled the flu vaccine for October 13, 2020, but then postponed the date to October 27, 2020. Mr. Busch gave the wrong date to his mother, and she gave the wrong date to Ms. Domagala.

26. Ms. Domagala drafted a letter describing Mr. Busch's severe reaction to the flu vaccine in October 2020 and gave it to Wendy Busch. The draft has the wrong date the vaccine

was given and misspelled Mr. Busch's family name.

27. Unbeknownst to Mr. Busch, Wendy Busch edited Ms. Domagala's draft stylistically, though she did not edit any portion of the draft describing Mr. Busch's severe reaction to the flu vaccine. Wendy Busch's edits consisted of correcting the spelling of Mr. Busch's family name, changing the date on which the letter would be submitted to the Program, eliminating material that did not address Mr. Busch's severe reaction to the flu vaccine, and placing the revised draft on the letterhead of the medical facility where Ms. Domagala worked rather than on the original bare Word document.

28. Mr. Busch, unaware of his mother's edits to Ms. Domagala's draft, submitted the revised draft to Ms. Kennedy on November 2, 2021.  Mr. Busch intended that this letter would satisfy the first documentation requirement prescribed by Dr. Barna, namely, documentation about his severe adverse reaction to the flu vaccine he received.  Mr. Busch had made an appointment with a medical provider in Omaha to satisfy the second documentation requirement, namely, documentation advising against his getting a second flu vaccine.

29. On November 5, 2021, Mr. Busch, who was participating in a rotation at a clinical site, was summoned by Ms. Kennedy to leave the site and come to a meeting with her and Dr. Barna.  Mr. Busch was not informed of the purpose of the meeting or what would be discussed. Although section 8.1 of the Master of Science in Physician Assistant Studies Program Handbook 2020-2021 (the "Handbook") provides that, if a student "is being recommended for academic or disciplinary … dismissal … the student ***shall be notified via electronic delivery as to the cause for such action*** by the PA Program Director (emphasis added)," Mr. Busch did not receive any notice that he was being recommended for such action by Ms. Kennedy or Dr. Barna.

30. The meeting with Ms. Kennedy and Dr. Barna lasted about ten minutes.  During

the meeting, Mr. Busch was asked why Ms. Domagala's letter had the wrong date for Mr. Busch's first flu vaccine and why he had not submitted a letter from a doctor advising that he should not get a second flu vaccine. Mr. Busch responded as best he could but was constantly interrupted and mocked. Mr. Busch was not informed of any charges of wrongdoing against him and was not given the opportunity to present witnesses or additional written material either at or after the meeting.

31. At the conclusion of the meeting, Mr. Busch was informed that he was dismissed from the Program for academic dishonesty. Although section 8.6.6 of the Handbook lists forms of "academic dishonesty" to include cheating, plagiarism, unauthorized assistance, multiple use of the same document, falsification or fabrication of data, complicity, and abuse of academic materials, Mr. Busch was not informed that he was guilty of any of these.

32. After the conclusion of the meeting of November 5, 2021, Ms. Domagala sent an e-mail to Ms. Kennedy and Dr. Barna, confirming her verification of Mr. Busch's severe reaction to the first flu vaccine and her own credentials as a nurse and explaining the mistake in the date of that vaccination. Ms. Domagala also called Ms. Kennedy and left her number and a voicemail message. Ms. Domagala followed up on her e-mail with a formal complaint to CSM. Wendy Busch also sent an e-mail to Ms. Kennedy and Dr. Barna, urging them not to ascribe Mr. Busch to her mistake in editing Ms. Domagala's draft. However, no one from CSM reached out to Ms. Domagala or Wendy Busch to investigate.

33. On November 11, 2021, Mr. Busch received an e-mail from Kristen Carr, the Program Clinical Coordinator, stating that she was informed by Ms. Kennedy that Mr. Busch had been dismissed, and that any appeal by him of this decision would be due by 5:00 PM the following day.

34.     Mr. Busch replied that, although he had been told at the meeting of November 5, 2021, that he would receive a formal letter of dismissal, he had not received such a letter, and that it was unfair to require him to prepare and submit an appeal within 24 hours, without being told why he was being dismissed and never being allowed to participate in the Pre-Appeal Process. CSM's PA Handbook, 8.5.4 indicates that the Pre-Appeal Process for an Academic Appeal is to discuss the matter of the appeal with the instructor, the Program Director, and the Associate Dean. If the matter of the appeal is not resolved to the satisfaction of the student, the student must submit an electronic appeal to the Office of Academic Affairs within seven days. Ms. Carr acknowledged that he had not been provided with the formal letter of dismissal and told him he would be granted seven more days to prepare and submit his appeal. While Mr. Busch was allowed seven more days to prepare and submit his appeal, he was required to do so without the Pre-Appeal Process and without any communication with the PA Program.

35.     Later, on November 11, 2021, Mr. Busch received a formal letter of dismissal signed by Ms. Kennedy and backdated November 5, 2021. The letter stated that the purpose of the meeting of November 5 was "to address a serious breach of professional ethics and integrity." The letter said that the documentation Mr. Busch submitted in support of his waiver application "demonstrated inconsistencies with documentation already in our student file," although it did not identify those "inconsistencies." The letter also said that Mr. Busch had not submitted documentation "from a licensed medical provider." Finally, the letter said that Mr. Busch was "unable to clarify the events surrounding the documentation [he] provided," and that he "continued to state that [he] did not believe any of [his] actions were improper, "which is "troubling and demonstrates poor judgment and a lack of ethical principles necessary to practice in the PA profession." Invoking CSM's academic dismissal policy, Mr. Busch was dismissed.

36. Mr. Busch submitted his appeal to CSM's Graduate Policies and Appeals Committee (the "Committee") on November 18, 2021, accompanied by 130 pages of evidence and a letter from Joseph Anthone, an Omaha medical provider, stating that testing by an allergist was needed before Mr. Busch received any further flu vaccines.

37. Mr. Busch's hearing before the Committee on December 2, 2021, took less than 15 minutes. Although section 8.5.4 of the Handbook provides that the Committee must evaluate an appeal "fairly" and give both sides "an opportunity to state their side of the case," none of the Committee members read even one page of the evidence Mr. Busch submitted. The only questions they asked were about the symptoms he experienced from the first flu vaccine.

38. On December 15, 2021, Kimberly Allen, Vice President of Academic Affairs at CSM, denied Mr. Busch's appeal. Dr. Allen asserted that Mr. Busch engaged in "intentional misconduct" by submitting Ms. Domagala's draft which "the student's parent … manipulated" in a variety of ways and which represented the view of someone whose licensed credentials "do not meet the approved criteria for a medical provider as determined by the PA Program."

## FIRST CAUSE OF ACTION

### *BREACH OF CONTRACT*

39. Each of the allegations set forth in paragraphs 1 through 38, inclusive, are hereby incorporated by this reference as if realleged fully herein.

40. The relationship between Mr. Busch and CSM was contractual, as set forth in the Handbook.

41. The Handbook confers a contractual right of basic fairness on Mr. Busch with respect to disciplinary actions against him by CSM. Mr. Busch was entitled to rely upon this right in connection with CSM's dismissal proceedings against him.

42. CSM denied Mr. Busch his contractual right to basic fairness at the hearings on November 5, 2021 and December 2, 2021, in a variety of ways, including: (1) denying him adequate notice of the allegations against him; (2) denying him the opportunity to examine adverse evidence or witness statements; (3) denying him the right to call witnesses and present evidence; (4) denying him the opportunity to cross-examine any witnesses against him; (5) failing to consider evidence he presented on appeal; (6) denying him a meaningful hearing on appeal; and (7) subjecting him to a final decision that was arbitrary and capricious.

43. At all times, Mr. Busch fulfilled his contractual obligations to CSM by timely paying tuition and fees to CSM.

44. As a result of CSM's breach of contract committed against Mr. Busch, he was wrongfully dismissed from CSM and his promising career as a physician's assistant was aborted, causing him damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## SECOND CAUSE OF ACTION

***VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12182, et seq., and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701, et seq.
(DISABILITY DISCRIMINATION INCLUDING FAILURE TO ACCOMMODATE)***

45. Each of the allegations set forth in paragraphs 1 through 44, inclusive, are hereby incorporated by this reference as if realleged fully herein.

46. Mr. Busch is disabled by viral and allergy induced asthma. Mr. Busch registered his disability with CSM when he first enrolled at CSM in the Program.

47. CSM is committed to complying with the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.* ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. ("Section 504").

48. CSM was required by the ADA and Section 504 reasonably to accommodate Mr.

Busch's asthma disability, including by excusing him from its requirement to have a flu vaccine because of the severe reaction it caused him.

49. In violation of the ADA and Section 504, CSM refused reasonably to accommodate Mr. Busch's disability and wrongfully dismissed him from the Program, aborting his promising career as a physician's assistant.

50. As a consequence of CSM's violation of the ADA and Section 504, Mr. Busch has incurred damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Busch demands a jury trial for all issues in this matter.

///


///

## RELIEF REQUESTED

WHEREFORE, Mr. Busch prays that this Honorable Court enter judgment in his favor and against CSM: (a) for general and compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to be determined at trial; (b) for reimbursement of the full amount of Mr. Busch's tuition, fees and other expenses plus accrued interest in an amount to be proven at trial; (c) for compensatory damages, including lost earnings; (d) for reimbursement of the full amount of expenses Busch incurred; (e) for reimbursement of the full amount of Mr. Busch's attorney's fees; and (f) further relief as justice requires.

DATED this 11th day of July, 2025.

Respectfully Submitted,

/s/ *Jason J. Bach*
Jason J. Bach
THE BACH LAW FIRM, LLC
7881 West Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorney for Plaintiff*